Walter MILLS and the Mills Family Limited Liability Company, Plaintiffs-Appellants,

v.

VILAS COUNTY BOARD OF ADJUSTMENTS, Defendant-Respondent.

Walter MILLS and the Mills Family Limited Liability Company, Plaintiffs-Appellants,

v.

VILAS COUNTY BOARD OF ADJUSTMENTS, Defendant-Respondent.

LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, Plaintiff-Respondent,

v.

John ANDERSON, Vilas County Zoning Administrator, and Vilas County Zoning Committee, Defendants-Respondents.

Court of Appeals

*No. 02–2546. Submitted on briefs February 6, 2003.—Decided February 25, 2003.*

2003 WI App 66

(Also reported in 660 N.W.2d 705.)

600

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Gregory B. Conway* of *Liebmann, Conway, Olejniczak & Jerry* of Green Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Carol J. Brown* of *Brown & LaCounte, LLP* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.  Walter Mills appeals judgments upholding a building permit denial by the Vilas County Board of Adjustment and refusing to enforce a mediation agreement between Mills and the Lac du Flambeau

Band of Lake Superior Chippewa Indians (Tribe). He contends the circuit court incorrectly concluded that the Vilas County zoning administrator could not issue a permit while the certiorari appeal of a previous denial of the same permit was pending. In addition, he contends the court erred when it refused to enforce the mediation agreement based on the political question doctrine and comity.

¶ 2. We conclude the trial court correctly determined that the certiorari appeal prevented the zoning administrator from issuing another permit and also that the court properly refused to enforce the mediation agreement based on principles of comity. Therefore, we affirm the judgments. We reject, however, the Tribe's request that we determine Mills's appeal is frivolous.

### BACKGROUND

¶ 3. Strawberry Island is a twenty-six-acre island in Flambeau Lake, which is located within the Lac du Flambeau reservation. The Mills family has owned the island since 1910. The island has great historical and cultural significance for the Tribe. It is also listed on the National Register of Historic Places and is considered a likely burial site by the Wisconsin State Historical Society under the Burial Sites Preservation Law. The island has not been developed in any substantial way.

¶ 4. In 1976, Mills received approval for a subdivision plat on the island and in 1995 he applied for a permit to build a single-family home and garage on one of the lots. Vilas County zoning administrator David Anderson denied the permit and gave Mills a list of five concerns he had with the proposed development. Mills appealed to the board of adjustment, which affirmed the denial. Mills then filed for a writ of certiorari with the circuit court.

¶ 5. While certiorari review was pending, Mills gave Anderson information to address the concerns. Anderson issued the building permit. The Tribe intervened as an interested party and appealed. The board concluded Anderson's decision was improper because of the pending certiorari review. Mills then sought certiorari review of the board's decision. In addition, the Tribe sought injunctive relief to prevent Anderson from issuing further permits until the court could resolve both certiorari reviews.

¶ 6. The circuit court consolidated the three cases and affirmed the board's decision to uphold the administrator's original denial of the building permit. The court also determined the board was correct when it concluded Anderson improperly issued a new permit while certiorari review was pending. Finally, based on these two decisions, the court concluded the Tribe's request for injunctive relief was moot.

¶ 7. At the court's suggestion, the parties began mediation in December 1997 to discuss the Tribe's purchase of the island. Mills agreed to mediation on the conditions that the Tribe waive its sovereign immunity and that its representatives have the authority to bind the Tribe. The Tribe agreed to waive its immunity. It further agreed that at least a majority of its council, which would have to approve any proposal, would participate directly in the mediation to avoid unnecessary delays.

¶ 8. In June 1998, the parties agreed that the Tribe would purchase the island for $1.5 million. After Mills accepted the Tribe's offer, the council members noted the Tribe's constitution might require a referendum to approve the expenditure. The parties' written agreement states the Tribe will pay Mills $1.5 million for the island "subject to the approval of Tribe member-

ship, if needed." In July 1999, the Tribe informed Mills that it intended to hold a referendum because of a clause in the Tribe's constitution requiring a referendum for expenditures of more than $10,000 of the Tribe's funds held in trust by the Department of the Interior. The Tribe said the use of trust funds was necessary because its gaming funds alone were insufficient.

¶ 9. The referendum, held in August 1999, failed. The parties agreed to reenter mediation, but their attempt at resolution failed after one brief session.[1] Mills then moved to enforce the original mediation agreement, arguing the Tribe's constitution did not require a referendum. The court denied the motion, concluding Mills should have challenged the decision to hold the referendum prior to the vote and may have waived any objection to the result by failing to do so. In addition, the court noted Mills was asking the court to overturn the results of an election. The court concluded the referendum was a political question and declined to address the dispute. In addition, the court said respect for the Tribe's sovereignty and the doctrine of comity weighed against enforcing the agreement. Mills appeals.

## DISCUSSION

¶ 10. We first address Mills's claim the zoning administrator had the authority to grant the building permit. He argues the administrator's initial rejection of the permit was conditional and, after Mills satisfied the conditions, the administrator could properly issue

[1] The Tribe opened with an offer of $800,000. Each party accuses the other of walking out shortly thereafter.

the permit. Mills further contends the board erred when it reversed because of the pending certiorari appeal. We disagree.

■■■■

¶ 11.   On certiorari review of a board of adjustment determination, we inquire (1) whether the board kept within its jurisdiction; (2) whether the board proceeded on a correct theory of law; (3) whether the board's action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the board might reasonably make the order or determination in question, based on the evidence. *Fabyan v. Waukesha County Board of Adj.*, 2001 WI App 162, ¶ 11, 246 Wis. 2d 851, 632 N.W.2d 116. Mills's challenge to the board's conclusion that the administrator could not issue a new permit when the prior denial was on appeal presents a jurisdictional issue, which is a question of law we review de novo. *See State ex rel. V.J.H. v. C.A.B.*, 163 Wis. 2d 833, 840, 472 N.W.2d 839 (Ct. App. 1991).

¶ 12.   The board's authority is governed by Vilas County's zoning regulations. Article IX, § 9.3(c), of Vilas County's zoning ordinance reads in part: "The Zoning Administrator may also require any additional information necessary to decide upon the issuance of a Zoning permit." Article X, § 10.4(B), states:   "An appeal shall stay all proceedings in furtherance of the action appealed from." Finally, article X, § 10.4(D) reads:   "All decisions and findings of the Board of Adjustment on appeal shall in all instances be final administrative determinations and shall thereafter be only subject to review by a court of law upon the filing of a writ of certiorari within 30 days of the board's decision."

¶ 13. Mills argues that the provision allowing the administrator to request additional information allows the grant of conditional permits and, therefore, Anderson properly issued the permit. We disagree. The interpretation of an ordinance is a question of law we review de novo. *See Hansman v. Oneida County*, 123 Wis. 2d 511, 514, 366 N.W.2d 901 (Ct. App. 1985). The ordinance says the administrator may request additional information "necessary to decide upon the issuance of a Zoning permit." We read the ordinance to require that the administrator request the information before making the decision, not after, as was the case here.

¶ 14. Further, we determine that even had the permit been conditional, the other two quoted sections of the ordinances would have required the board to reach the conclusion it did. Mills's certiorari appeal of the permit denial stayed any further proceedings regarding that denial under article X, § 10.4(B). Further, the board's decision was final under article X, § 10.4(D), and the only appeal was to the circuit court. Even if we were to construe the permit denial as conditional, Mills gave up any opportunity to have the administrator revisit his decision by requesting certiorari review.

¶ 15. Mills argues that his compliance with the conditions rendered the certiorari proceedings moot. We disagree. Not only would this contravene the plain language of Vilas County's ordinances, it would also, as the circuit court noted, create "jurisdictional chaos." If a zoning ordinance provides for an appeal to a board of adjustment from an adverse ruling of an administrative officer and circuit court review of the board's decision is also provided by statute, such remedies are exclusive of

all others. *Nodell Invest. Corp. v Glendale*, 78 Wis. 2d 416, 423, 254 N.W.2d 310 (1977) (citing *Jefferson County v. Timmel*, 261 Wis. 39, 63–64, 51 N.W.2d 518 (1952)). As the circuit court noted, parties often erroneously resort to court before exhausting their administrative remedies. When the party is properly before the court, however, the court has exclusive jurisdiction over the dispute, and the administrative agencies cannot reevaluate their decision until the court relinquishes that jurisdiction. To allow otherwise would be to encourage conflicting and competing decisions of courts and various administrative agencies.

¶ 16. We next address the trial court's refusal to enforce the mediation agreement. Mills argues the court incorrectly applied the political question doctrine to the dispute and refused to decide the case on its merits. Instead, Mills claims, the court should have enforced the agreement because the Tribe's constitution did not require a referendum. While we agree the political question doctrine does not apply to this case, we conclude the trial court nonetheless correctly refused to address the merits of the dispute because of the doctrine of comity.

¶ 17. The political question doctrine is invoked by courts declining to address issues better left resolved by other branches of government. *See Vincent v. Voight*, 2000 WI 93, ¶ 192, 236 Wis. 2d 588, 614 N.W.2d 388 (Sykes J., concurring in part, dissenting in part). The doctrine is based upon separation of powers principles and essentially states, "The judiciary should not be drawn into deciding issues that are essentially political in nature, exclusively committed by the constitution to another branch of government and not susceptible to judicial management or resolution." *Id.*

608

¶ 18. The political question doctrine does not apply here. Central to the doctrine are notions of the separation of powers. The court's use of the doctrine here focused on the Tribe's decision to hold the referendum and its results. This does not strictly present a political question. It does not involve two branches of the same government, but rather two branches of two different governments. It would not be for Wisconsin courts to determine what constitutes a political question within the Lac du Flambeau Tribe.

¶ 19. Instead, the court's invocation of the doctrine of comity correctly addresses its role regarding the referendum. Under this doctrine, courts will, as a matter of discretion, rather than obligation, defer to the assertion of jurisdiction or give effect to the judgments of other states or sovereigns out of mutual respect and for the purpose of furthering the orderly administration of justice. *Teague v. Bad River Band of Chippewa Indians*, 2000 WI 79, ¶ 35, 236 Wis. 2d 384, 612 N.W.2d 709. The scope of comity is determinable as a matter of judicial policy, and we review the circuit court's decision under the erroneous exercise of discretion standard. *See id.* (citing *International Harvester Co. v. McAdam*, 142 Wis. 114, 124 N.W. 1042 (1910)). A court properly exercises discretion when it considers the facts of record under the proper legal standard and reasons its way to a rational conclusion. *Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37 (Ct. App. 1991).

¶ 20. The circuit court's justification for invoking comity was fostering and maintaining the relationship between state and tribal governments. Specifically, the court pointed to the problems resulting from overlaps in state and tribal jurisdiction, the efforts the govern-

ments have made to resolve these concerns and the admonishment state courts have received to respect tribal decisions. The court noted Mills was essentially asking the court to overturn the decision of a sovereign nation. We conclude these considerations reflect the court's exercise of discretion.

¶ 21.   The court's decision focuses primarily on the outcome of the referendum. While we agree this was proper, we conclude the tribe's decision to hold the referendum should also be deferred to based upon principles of comity. The mediation agreement stated the purchase was subject to the tribal membership's agreement, if needed. The parties agree "if needed" means if required by the tribal constitution. The record shows the tribal council determined it would need to use trust funds, in part, to pay for the island, and under the Tribe's constitution, a referendum is required if more than $10,000 of these funds is to be expended. Comity does not allow Wisconsin courts to second guess that decision.

¶ 22.   Mills argues comity should not apply because the Tribe waived its sovereign immunity and also agreed to allow the tribal council to bind the Tribe to any agreement reached. This argument, however, is undercut by Mills's acceptance of the agreement's language. The Tribe alerted Mills at mediation that a referendum might be required. Mills agreed to this condition, which affected the council's ability to bind the Tribe. Further, the Tribe's consent to suit in state court is not a waiver of its sovereign right to interpret and apply its own laws.

¶ 23.   Nor do we accept Mills's claim that comity only applies when two courts claim jurisdiction. He

relies on the specific facts of the supreme court's decision in *Teague*, which involved a state court and a tribal court disputing which had jurisdiction over an employment dispute. *Teague*, 2000 WI 79 at ¶ 1. Comity, however, encompasses more than just the competing jurisdiction of courts. It is the recognition that one state allows within its territory to legislative, executive or judicial acts of another, having due regard to duty and convenience and to the rights of its own citizens. *Estate of Steffke*, 65 Wis. 2d 199, 203, 222 N.W.2d 628 (1974).

¶ 24. Additionally, Mills attacks the Tribe's actions as incorrect under its constitution and as a ruse to back out of the agreement. He contends the Tribe relied on different rationales to justify the referendum when it informed him of the decision to hold the vote and before the circuit court. In addition, he argues the referendum's wording and actions by the tribal council prior to the vote suggest the referendum was merely advisory rather than required. He attacks the Tribe's decision to use trust funds as merely an excuse to justify the referendum and further claims the Tribe should not be allowed to use the trust funds because the mediation agreement does not contemplate their use.

¶ 25. Principles of comity, however, lead us to conclude we should not address Mills's concerns. The Tribe's rationale for requiring the referendum is a result of the council's interpretation of the constitution. Further, the referendum's wording and the decision to use trust funds to pay for the island are legislative decisions by the council. Comity requires Wisconsin courts to defer not only to the council's interpretation of the constitution, but also its budgetary and policy decisions. *See id.* Further, the mediation agreement's silence regarding the source of the Tribe's funding supports the argument we should defer to the Tribe's

decision. The absence of a specified funding source suggests that the Tribe alone would determine the purchase money's source. The council's decision to use trust funds is a legislative choice that, according to its interpretation of the constitution, required a referendum. Whether the Tribe is legally correct or had questionable motives are not issues we should address.

¶ 26.   Our decision hinges on the agreement's use of the "subject to the approval of tribe membership, if needed" language. Without this language, the court would likely have been able to hold the Tribe to the agreement because of its sovereign immunity waiver. The parties, however, conditioned their agreement on obtaining the approval of the Tribe's membership, if it was needed. The Tribe, interpreting its own law, determined it was. Our reliance on comity defers to the Tribe's law and the council's interpretation of it.

¶ 27.   Mills also contends he did not waive his right to challenge the referendum by failing to prevent the vote from taking place. We do not address this argument because of our conclusion that the court correctly applied the doctrine of comity. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

¶ 28.   Finally, the Tribe has moved for costs and fees for a frivolous appeal, pursuant to WIS. STAT. § 809.25(3). The Tribe asserts Mills's appeal lacks good faith and is intended to harass the Tribe because it is a continuing step in his attempt to prolong the legal dispute over the island. Also, the Tribe argues Mills should have known the portions of his appeal were without a good faith argument for an extension, modification or reversal of existing law. We disagree.

¶ 29.   In order to impose sanctions against a party for a frivolous appeal under WIS. STAT. § 809.25, we must determine whether one or more of the following exist:

> 1. The appeal or cross-appeal was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

> 2. The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

¶ 30.   We cannot conclude that Mills's appeal was filed to harass the Tribe or that he should have known the appeal was without any reasonable basis in the law. The scope of comity, as noted, is a question of judicial policy and we determine Mills's appeal presents a good faith argument why it should not have applied in this situation. Further, Mills correctly argued the court misapplied the political question doctrine. The appeal is not frivolous.

*By the Court.*—Judgments affirmed.