# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP1206 |

| | |
|---|---|
| COMPLETE TITLE: | Daniel J. Hennessy, Jr. and Jane E. Hennessy, Plaintiffs-Appellants-Petitioners, v. Wells Fargo Bank, N.A., Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 394 Wis. 2d 357,950 N.W. Wis. 2d 357
PDC No:2020 WI App 64 - Published

| | |
|---|---|
| OPINION FILED: | January 14, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 4, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | William S. Pocan |

JUSTICES:
ZIEGLER, C.J., delivered the majority opinion for a unanimous Court. DALLET, J., filed a concurring opinion, in which HAGEDORN and KAROFSKY, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiffs-appellants-petitioners, there were briefs filed by *Daniel A. Manna, John Franke, Tamar B. Kelber*, and *Gass Weber Mullins LLC*, Milwaukee. There was an oral argument by *Daniel A. Manna.*

For defendant-respondent, there was a brief filed by *Nina G. Beck, Michael B. Apfeld, Daniel J. Blinka*, and *Godfery & Kahn, S.C.*, Milwaukee. There was an oral argument by *Nina G. Beck.*

**2022 WI 2**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP1206
(L.C. No. 2016CV8617)

STATE OF WISCONSIN      :      IN SUPREME COURT

Daniel J. Hennessy, Jr. and Jane E. Hennessy,

    Plaintiffs-Appellants-Petitioners,

    v.

Wells Fargo Bank, N.A.,

    Defendant-Respondent.

**FILED**

**JAN 14, 2022**

Sheila T. Reiff
Clerk of Supreme Court

ZIEGLER, C.J., delivered the majority opinion for a unanimous Court. DALLET, J., filed a concurring opinion, in which HAGEDORN and KAROFSKY, JJ., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, C.J. This is a review of a published decision of the court of appeals, <u>Hennessy v. Wells Fargo Bank, N.A.</u>, 2020 WI App 64, 394 Wis. 2d 357, 950 N.W.2d 877, affirming an order of the Milwaukee County circuit court[1] that domesticated a Mexican judgment in favor of Wells Fargo Bank, N.A., and against Daniel and Jane Hennessy.

---

[1] The Honorable William S. Pocan presided.

¶2    The Hennessys argue that the circuit court incorrectly held that, under Mexican law, the foreign judgment was valid and personally enforceable against them. In the process, the Hennessys ask that this court alter the standard for reviewing issues of foreign law and consider such issues de novo as questions of law. In addition, the Hennessys claim that the circuit court should not have domesticated the Mexican judgment under principles of comity.

¶3    In Wisconsin, a foreign country's law must be proven before a circuit court as a question of fact. We reaffirm this principle and decline the Hennessys' invitation to consider foreign law de novo. Upon a review of the record, the court cannot conclude that the circuit court's interpretation of Mexican law was clearly erroneous. Further, the circuit court did not erroneously exercise its discretion by choosing to recognize the Mexican judgment in Wisconsin. Thus, the court of appeals is affirmed, and Wells Fargo's judgment against the Hennessys was properly domesticated.

I.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4    The Hennessys took out a loan of $7.5 million owed to Wells Fargo to build a condominium in San Jose del Cabo, Mexico. As part of the transaction, the parties signed three separate agreements. They executed a construction loan agreement, a promissory note, and an addendum to the note. These documents are governed by Wisconsin law and are written in English. In addition, the parties entered into a trust agreement. The trust

2

held the property underlying the transaction as collateral in case of the Hennessys' default. Mexican law governs the trust agreement, which is written in Spanish.

¶5 The agreements are closely interlinked and reference each other. For instance, the loan agreement stated that the security is "granted . . . under the Guaranteed Trust Agreement." The trust agreement, for its part, stated that the Hennessys must "comply with all obligations [they] assumed under the Loan Documents," and, in the case of default, the Hennessys were obligated to "immediately pay any and all amounts [they] owe[] under the Loan Documents."

¶6 The Hennessys defaulted under the agreements, and in May 2012, Wells Fargo initiated a foreclosure action in Mexico. Wells Fargo filed its lawsuit before the Eighth District Civil Court, a Mexican federal court located in Mexico City ("the Mexican district court"). Wells Fargo claimed it was entitled to payment for amounts owed under the transaction agreements and, if payments were not made, possession of the property as collateral. As an exhibit to the complaint, Wells Fargo attached the loan agreement, the note and its addendum, and the trust agreement.

¶7 In March 2014, the Mexican district court issued a judgment in favor of Wells Fargo ("the Mexican judgment"), and both parties appealed the decision. In October 2014, an appellate court, the Third Unitary Court of Mexico ("the Mexican appellate court"), affirmed in part the Mexican district court's decision and awarded a judgment in favor of Wells Fargo. The

3

Mexican appellate court amended the judgment issued by the district court. It stated in relevant part:[2]

> The plaintiff partially proved its claim, and the defendants did not prove their counterarguments; consequently, the defendants are sentenced to pay the plaintiff the principal amount of US$ 7,500,000.00 (seven million, five hundred thousand and 00/100 United States dollars, legal tender in the United States of America), in its equivalent in national currency (pesos) at the time that payment is made.
>
> In addition, the defendants are sentenced to pay unpaid ordinary interest accrued both during and after the construction period, which may be quantified in enforcement of a judgment in accordance with what was stipulated in all of the loan documents admitted into court as evidence.
>
> The defendant is informed that if it does not pay the foregoing amounts, it will be ordered to deliver to the plaintiff the property with which it guaranteed the promissory note in the loan agreement, so that the property can be auctioned off according to the terms of the chapter that applies to this matter.
>
> . . . The defendants are sentenced to pay the claim identified in section (d) of the demand, consisting of payment of the delay fee and expenses and commissions caused, which may be quantified in enforcement of the judgment, in accordance with what was stipulated in all of the loan documents admitted into court as evidence.
>
> . . . The defendants are sentenced in trial court to pay court costs.

¶8 No further appeal was taken in the case, and the Mexican judgment, as amended by the Mexican appellate court, was

---

[2] The judgment was written originally in Spanish. However, the parties submitted into evidence a certified English translation of the document. No party disputes the accuracy of the translation.

indisputably final and binding upon the parties. In the summer of 2017, the property was transferred from the Hennessys to Wells Fargo.

¶9 In November 2016, the Hennessys filed a complaint in the Milwaukee County circuit court. They sought a declaratory judgment that Wells Fargo was barred under the applicable statute of limitations from bringing a breach of contract claim under Wisconsin law based on the Hennessys' failure to pay their loan obligations. In May 2017, Wells Fargo filed a counterclaim seeking domestication of the Mexican judgment. In August 2017, the circuit court granted summary judgment in favor of the Hennessys for their declaratory judgment claim. The circuit court held that any breach of contract action by Wells Fargo was time barred, but stated that the order did not affect Wells Fargo's action to enforce the Mexican judgment.

¶10 To resolve Wells Fargo's remaining request for domestication, the circuit court divided the proceedings into two phases. First, the circuit court heard arguments on the effect and meaning of the Mexican judgment under Mexican law. Second, the circuit court determined whether to recognize the Mexican judgment under principles of comity.

¶11 For the first phase of the proceedings, the Hennessys claimed that the Mexican order was not a valid judgment enforceable against them personally. Specifically, they claimed that the Mexican courts had resolved only in rem claims, and no

5

in personam money judgment against the Hennessys had been entered.[3]

¶12 The circuit court received briefing from the parties, including hundreds of pages of exhibits on Mexican law. On June 11, 2018, and July 17, 2018, the circuit court held hearings at which the parties presented their arguments. In addition, experts testified on the substance and meaning of Mexican law. Wells Fargo presented Alejandro Osuna-Gonzalez, an attorney who taught law classes and practiced in Mexico. He testified that the Mexican judgment was final and enforceable against the Hennessys. In addition, Mr. Osuna explained that, under the Mexican judgment, Wells Fargo could seek monetary compensation for any difference between the value of the collateral and the amounts still owed to Wells Fargo. In response, the Hennessys presented the testimony of Georgina Fabian, an attorney who practiced commercial law in Mexico. Ms. Fabian stated that under Mexican law a creditor cannot combine an in rem and an in personam action. Thus, according to the Hennessys' expert, because Wells Fargo pursued foreclosure proceedings in Mexico, a form of in rem relief, the Mexican judgment could not extend to the Hennessys personally for any money judgment or deficiency.

---

[3] The Hennessys argued that Wells Fargo sought an action for transfer of the property as collateral, thus making the nature of the lawsuit in rem. By contrast, the Hennessys claimed that if Wells Fargo had sought a judgment for money, or for a deficiency after the collateral had been sold, the lawsuit would have been in personam.

¶13 On October 16, 2018, the circuit court issued a written decision holding that the Mexican judgment was valid and could be enforced against the Hennessys personally. The circuit court reasoned that the Mexican judgment mandated that the Hennessys either pay the amounts owed to Wells Fargo or surrender the property as collateral. Under Mexican law, if the Hennessys failed to pay Wells Fargo, the bank could recover any deficiency remaining after the collateral was sold, and, by seeking a deficiency, Wells Fargo was enforcing the Mexican judgment. Thus, the circuit court credited Wells Fargo's expert and rejected the Hennessys' argument that the Mexican judgment provided only in rem relief.

¶14 After issuing its October 2018 decision, the circuit court continued to the second phase of the proceedings and considered whether to domesticate the Mexican judgment. The circuit court again accepted briefing and exhibits, and on April 11, 2019, a hearing was held. At the hearing, the circuit court concluded, under principles of comity, that Wells Fargo was entitled to recognition of the Mexican judgment.

¶15 On May 20, 2019, the circuit court entered an order "recognizing" the Mexican judgment, and on June 20, 2019, the circuit court ordered the clerk of court to enter the judgment against the Hennessys. In the June 20 order, the circuit court stated that Wells Fargo was entitled to $7.5 million, "plus unpaid ordinary interest accrued both during and after the construction period." In addition, the circuit court awarded Wells Fargo "delay fees, expenses, and commissions in accordance

7

with . . . the underlying loan documents," as well as "court costs incurred in Mexico." Finally, the order allowed Wells Fargo to "foreclose on the underlying collateral . . . and to seek any resulting deficiency."

¶16 The Hennessys appealed, and, on September 15, 2020, the court of appeals affirmed the circuit court's decision. Hennessy, 394 Wis. 2d 357, ¶47. The court of appeals first rejected the Hennessys' argument that the Mexican judgment was not valid and enforceable against them personally under Mexican law. Id., ¶¶14-33. It noted that, in Wisconsin, the substance of foreign laws is treated as a question of fact. Id., ¶¶15-18. The court of appeals continued, holding that the circuit court's finding that the Mexican judgment provided both in rem and in personam relief was not clearly erroneous. Id., ¶¶19-30. Further, the court of appeals found that it was not clearly erroneous for the circuit court to read the Mexican judgment as permitting monetary relief against the Hennessys, despite the fact that the loan agreement, note, and addendum were governed by Wisconsin law. Id., ¶¶31-33. Finally, the court of appeals rejected the Hennessys' argument that the circuit court had erroneously exercised its discretion by domesticating the Mexican judgment under principles of comity. Id., ¶¶34-46. In particular, the court of appeals did not agree with the Hennessys that the inclusion of unquantified interest, damages, fees, and costs in the Mexican judgment rendered domestication inappropriate. Id., ¶¶43-45.

8

¶17 The Hennessys petitioned for our review, and on February 24, 2021, we granted that petition.

## II. STANDARD OF REVIEW

¶18 The Hennessys ask this court to alter its current standard for reviewing questions of a foreign country's law.[4] In addition, the Hennessys seek reversal of the circuit court and court of appeals based upon their interpretations of the Mexican judgment and on international comity. We will first address the Hennessys' arguments on the proper standard of review.[5]

### A. Interpretation Of Foreign Law

¶19 For centuries, the common law established that, unlike the laws of the domestic jurisdiction, a foreign country's laws must be pleaded and proven as facts. See Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. Ltd., 585 U.S. ___, 138 S. Ct. 1865, 1872-73 (2018); Church v. Hubbart, 6 U.S. (2 Cranch) 187,

---

[4] The Hennessys admit that they did not challenge the standard of review for questions of foreign law in the courts below. Generally, issues "will not be considered for the first time on appeal." State v. Caban, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). But the rule "is not absolute." Apex Elecs. Corp. v. Gee, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998). "When an issue involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision, this court may exercise its discretion to address the issue." Id. The issue presented is a question of law, which has been thoroughly briefed by the parties and is of statewide significance. Thus, we will consider the issue, despite the Hennessys forfeiting the argument in courts below.

[5] For an analysis on the merits of the Hennessys' claims, see infra, section III.

9

236 (1804) (Marshall, C.J.) ("Foreign laws are well understood to be facts which must, like other facts, be proved to exist before they can be received in a court of justice."); 31A C.J.S. Evidence § 38 (2021) ("Unless authorized by statute . . . the law of other nations must be pleaded and proved.").[6]

¶20 Over 150 years of jurisprudence, we have recognized this basic principle in Wisconsin. Hull v. Augustine, 23 Wis. 383, 386 (1868) (noting that a party may establish a defense under foreign law by "alleg[ing]" the defense in its pleadings and "sustain[ing] this averment by proof on the trial"); Hite v. Keene, 149 Wis. 207, 215, 134 N.W. 383 (1912) ("The question of what a foreign law is, is always a question of fact."); Milwaukee Cheese Co. v. Olafsson, 40 Wis. 2d 575, 580, 162 N.W.2d 609 (1968) ("[T]he laws of foreign countries must be pleaded and proved as any other fact."). Questions of a foreign country's law are "an issue for the court." Wis. Stat. § 902.02(5) (2017-18).[7] As questions of fact assigned to circuit courts in the first instance, appellate courts review questions of a foreign country's law under the "clearly erroneous"

---

[6] In the United States, the laws of other states were treated the same as the laws of foreign countries. Both were considered questions of fact. See Rape v. Heaton, 9 Wis. 328, 341 (1859) ("When a question depends on the laws of a sister state, in our courts, such laws are a part of the evidence in the case, and like another fact must be proved by him who holds the affirmative." (quotations omitted)). As discussed below, we now consider other states' laws as questions of law.

[7] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

10

standard, not de novo. Royster-Clark, Inc. v. Olsen's Mill, Inc., 2006 WI 46, ¶¶11-12, 290 Wis. 2d 264, 714 N.W.2d 530 ("[T]his court defers to the circuit court's findings of fact unless they are unsupported by the record and are, therefore, clearly erroneous."); Griffin v. Mark Travel Corp., 2006 WI App 213, ¶4, 296 Wis. 2d 642, 724 N.W.2d 900 ("A trial court's findings of fact [as to the content of a foreign country's laws] may not be set aside on appeal unless they are clearly erroneous." (quotations omitted)).

¶21 The requirement that foreign laws be proven as facts has close ties to the doctrine of judicial notice. As explained by McCormick on Evidence:

> In the ordinary process of finding the applicable law, the normal method then is by informal investigation of any sources satisfactory to the judge. Thus, this process has been traditionally described in terms of the judge taking judicial notice of the law applicable to the case at hand. Indeed, when the source-material was not easily accessible to the judge, as in the case of "foreign law" or city ordinances, law has been treated as a peculiar species of fact, requiring formal proof.

2 McCormick on Evid. The Judge's Task as Law-Finder: Judicial Notice of Law § 335 (8th ed. 2020).

¶22 Thus, in Wisconsin, our courts by statute "take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States." Wis. Stat. § 902.02(1). Because courts "may inform [themselves] of such laws in such manner as [they] may deem proper," § 902.02(2), and do not rely purely on allegations and evidence

11

offered by the parties, courts review questions of other states' laws independently. See, e.g., Am. Fam. Mut. Ins. Co. v. Cintas Corp. No. 2, 2018 WI 81, ¶¶20-34, 383 Wis. 2d 63, 914 N.W.2d 76 (reviewing and applying the law of Ohio de novo).

¶23 Notably, Wis. Stat. § 902.02 explicitly excludes the law of foreign countries from judicial notice:

> (5) Foreign country. The law of a jurisdiction other than [the states, territories and other jurisdictions of the United States] shall be an issue for the court, but shall not be subject to the foregoing provisions concerning judicial notice.

§ 902.02(5); see also Milwaukee Cheese, 40 Wis. 2d at 580 (stating that the Uniform Judicial Notice of Foreign Law Act, now codified under § 902.02, "chang[ed] . . . the established law" for proving the law of other states but left in place the requirement that "the laws of foreign countries . . . be pleaded and proved as any other fact").

¶24 Other states have altered the common law, and have allowed courts to decide questions of a foreign country's law independently, by permitting courts, whether through rule or statute, to take judicial notice of the foreign country's law. See, e.g., Mich. R. Evid. 202(a) (2018) ("A court may take judicial notice without request by a party of . . . the laws of foreign countries."); Harkness v. Harkness, 577 N.W.2d 116, 119 (Mich. Ct. App. 1998) ("[A trial court's] interpretation of and conclusions about American, foreign, and international law are reviewed de novo."); In re Estate of Crane, No. 288654, 2010 WL 935651, at *4 (Mich. Ct. App. Mar. 16, 2010) (explaining the

12

background and history of Michigan's change in treatment of a foreign country's laws after allowing courts to take judicial notice of the law).

¶25 The federal courts have followed a similar path. In 1966, the Federal Rules of Civil Procedure were amended to permit judicial notice of a foreign country's law. Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."). The federal rule states explicitly that issues of a foreign country's law are "question[s] of law." Id.; see Animal Sci. Prods., 138 S. Ct. at 1873 ("Appellate review, as is true of domestic law determinations, is de novo.").

¶26 Even though Wisconsin's standard of review has been long established, the standard has been reaffirmed by this court on numerous occasions, and Wisconsin's statutory notice provisions on foreign law have not been changed, the Hennessys ask that the court resolve issues of foreign countries' laws as questions of law. Whether we treat this issue solely as a matter of stare decisis, statutory interpretation, or both, we decline to do so.

¶27 "Any time this court is asked to overturn a prior case, we must thoroughly consider the doctrine of stare decisis." Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶41, 281 Wis. 2d 300, 697 N.W.2d 417. "Fidelity to precedent ensures that existing law will not be abandoned lightly. When existing law is open to revision in every case, deciding cases

13

becomes a mere exercise of judicial will, with arbitrary and unpredictable results." Hinrichs v. DOW Chem. Co., 2020 WI 2, ¶67, 389 Wis. 2d 669, 937 N.W.2d 37 (quoting Schultz v. Natwick, 2002 WI 125, ¶37, 257 Wis. 2d 19, 653 N.W.2d 266). Thus, "any departure from stare decisis requires special justification." Id. (quotations omitted).

¶28 When asked to overturn precedent, we consider whether several factors are present:

> (1) Changes or developments in the law have undermined the rationale behind a decision; (2) there is a need to make a decision correspond to newly ascertained facts; (3) there is a showing that the precedent has become detrimental to coherence and consistency in the law; (4) the prior decision is unsound in principle; or (5) the prior decision is unworkable in practice.

State v. Robinson, 2019 WI 102, ¶50, 389 Wis. 2d 190, 935 N.W.2d 813 (quotations omitted). In addition, we frequently review "whether reliance interests are implicated" and "whether [the decision] has produced a settled body of law." Johnson Controls, Inc. v. Emp'rs Ins. of Wausau, 2003 WI 108, ¶99, 264 Wis. 2d 60, 665 N.W.2d 257.

¶29 There has been no "[c]hange[] or development in the law" that has "undermined the rationale behind" Wisconsin's current standard of review for questions of a foreign country's law. Robinson, 389 Wis. 2d 190, ¶50. The justifications underlying the question of fact standard remain valid today. Countries use different languages, and have distinct legal systems, cultural values, and societal expectations, all of which influence legal interpretation and analysis. As was true

14

in centuries past, applying a wholly independent standard of review to a foreign country's jurisprudence can create substantial difficulties for courts, and having a question of fact standard can relieve the pressure placed on the judicial system.[8] The standard places the burden on the parties to present what evidence and expert testimony they believe are relevant on the issue of foreign law, and limits appellate review to clearly erroneous interpretations. The process may serve to facilitate efficient and effective resolution of foreign law disputes. These disputes may otherwise consume court resources without consequent development of Wisconsin law.

¶30 Nonetheless, the Hennessys cite policy rationales in support of their position. They argue that recrafting issues of a foreign country's laws as questions of law would allow courts to exercise independent judgment, and it would give courts the opportunity to fully analyze the substance of foreign law. We explained over 50 years ago in Milwaukee Cheese that, while "[i]t is relatively easy to gain access to the laws of the states," "[a]ccess to the laws of foreign countries is far more difficult. Even if the laws were readily available, language barriers, problems of interpretation, and unfamiliar legal

---

[8] For instance, the instant dispute concerns interrelated legal documents that repeatedly cross-reference each other. The loan agreement, the note, and the note's addendum are governed by Wisconsin law and are written in English, while the trust agreement is governed by Mexican law and is written in Spanish. Accurately interpreting the documents and the Mexican judgment at issue under a question of law standard could present significant linguistic and conceptual challenges.

systems compound the difficulties involved in a search of the law." 40 Wis. 2d at 581; see also Bodum USA, Inc. v. La Cafetiere, Inc., 621 F.3d 624, 638-39 (7th Cir. 2010) (Wood, J., concurring) ("Exercises in comparative law are notoriously difficult, because the U.S. reader is likely to miss nuances in the foreign law, to fail to appreciate the way in which one branch of the other country's law interacts with another, or to assume erroneously that the foreign law mirrors U.S. law when it does not."). The Hennessys fail to cite a single case where litigants, under the question of fact standard, were inhibited from presenting to the court a full and accurate body of a foreign country's law. Although the Hennessys disagree with the circuit court's findings in this case, there is no indication that the record was incomplete or somehow inadequate.

¶31 The Hennessys correctly identify jurisdictions that treat issues of foreign law as questions of law, but there are in fact other jurisdictions that, like Wisconsin, continue to follow the common law approach. See, e.g., Ramsey County v. Yee Lee, 770 N.W.2d 572, 577-78 (Minn. Ct. App. 2009) ("Foreign law is a matter of fact which the courts of this country cannot be presumed to be acquainted with or to take judicial notice of unless it is pleaded and proved." (quotations omitted)). Moreover, "[i]t is not a sufficient reason for this court to overrule its precedent that a large majority of other jurisdictions, with no binding authority on this court, have reached opposing conclusions." Johnson Controls, 264 Wis. 2d 60, ¶100. Similarly, a policy disagreement with a prior

16

decision does not, on its own, justify overturning precedent. Progressive N. Ins. Co., 281 Wis. 2d 300, ¶¶46, 50 ("[E]ven if this court were now persuaded by . . . policy arguments [that opposed a prior decision], that is not a sufficient reason to overturn the decision.").

¶32 Further, subsequent review and development in the law have not undermined the validity of Wisconsin's standard of review. Cf. Robinson, 389 Wis. 2d 190, ¶¶51-57 (overturning a decision from this court when it did not conform to U.S. Supreme Court precedent upon which the decision was based); Johnson Controls, 264 Wis. 2d 60, ¶105 (reasoning that a decision from this court could not be upheld under stare decisis principles where the decision could not "be reconciled [with other Wisconsin precedent] without generating . . . arbitrary and illogical distinctions"). On numerous occasions, this court has concluded that Wisconsin applies a question of fact standard for interpretation of foreign law. See, e.g., Milwaukee Cheese, 40 Wis. 2d at 580-81. There is no indication that the prior decisions were wrongly decided, "unsound in principle," or subject to change due to "newly ascertained facts." Robinson, 389 Wis. 2d 190, ¶50. The foundational common law principles that support Wisconsin's standard have not changed, and the challenges that underlie the interpretation of a foreign country's law remain.

¶33 Most significantly, the question of fact standard has "produced a settled body of law" that has, over the course of many decades, been workable in practice. Johnson Controls, 264

17

Wis. 2d 60, ¶99; Robinson, 389 Wis. 2d 190, ¶50. The court of appeals and this court have consistently relied on the question of fact standard for over 150 years. Hull, 23 Wis. at 386; Milwaukee Cheese, 40 Wis. 2d at 580-81; Griffin, 296 Wis. 2d 642, ¶4. This is not a case where a decision, propped up on infirm legal grounds, fails "to provide suitable direction and consistency to [the] area of the law." Johnson Controls, 264 Wis. 2d 60, ¶106. Quite the opposite. Wisconsin courts, under current law, have a clearly established standard, and they have "regularly applied [it] . . . in a consistent manner." Progressive N. Ins. Co., 281 Wis. 2d 300, ¶51; see, e.g., Griffin, 296 Wis. 2d 642, ¶¶5-15 (applying the standard to interpretation of Mexican laws and treaties); Witt v. Realist, Inc., 18 Wis. 2d 282, 289-91, 118 N.W.2d 85 (1962) (using the question of fact standard to interpret the meaning of German law).

¶34 Additionally, the question of fact standard for the law of foreign countries is supported by Wisconsin statutes. Wisconsin Stat. § 902.02(5) states that courts may not take judicial notice of a foreign country's law, and judicial notice is intimately tied to questions of law and de novo review.

¶35 Wisconsin Stat. § 902.02(1) states explicitly that the laws of other states are subject to judicial notice. Courts do not need to rely on the allegations and proofs offered by the parties, and thus, courts review questions of other states' laws independently. See, 2 McCormick on Evid., supra ¶21, § 335 (explaining the connection between judicial notice and

18

independent judicial review).  On appeal, the interpretation of other states' laws is a question of law reviewed de novo.  See, e.g., Am. Fam. Mut. Ins. Co., 383 Wis. 2d 63, ¶¶20-34.  Notably, other states have transitioned to a question of law standard for foreign countries' laws by allowing courts to take judicial notice of the law.  See, e.g., Mich. R. Evid. 202(a) (2018).  Wisconsin has not done so.

¶36 Unlike questions of other states' laws, Wis. Stat. § 902.02(5) explicitly excludes the law of foreign countries from judicial notice.  See Milwaukee Cheese, 40 Wis. 2d at 580 (explaining changes made by the legislature in the Uniform Judicial Notice of Foreign Law Act to require judicial notice for other states' laws, while not altering the question of fact standard for foreign countries' laws).[9]  Nowhere in the statutory chapter on judicial notice does the legislature permit judicial

---

[9] To the extent that this court, in prior cases, has cited the notice statute in support of the question of fact standard, this bolsters the argument against discarding our past decisions, as the Hennessys request.  See Witt v. Realist, Inc., 18 Wis. 2d 282, 289, 118 N.W.2d 85 (1962) (citing the notice provisions in the context of explaining the question of fact standard); Milwaukee Cheese Co. v. Olafsson, 40 Wis. 2d 575, 580, 162 N.W.2d 609 (1968).  Stare decisis has greater significance when our prior decisions involve the interpretation of statutes.  See Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶52, 281 Wis. 2d 300, 697 N.W.2d 417 ("This court has long been committed to the principle that a construction given to a statute by the court becomes a part thereof, unless the legislature subsequently amends the statute to effect a change." (quotations omitted)); Kimble v. Marvel Ent., LLC, 576 U.S. 446, 456 (2015) (explaining that stare decisis "carries enhanced force when a decision . . . interprets a statute" because "critics of [the] ruling can take their objections across the street, and [the legislature] can correct any mistake it sees").

notice of foreign countries' laws. In other states that, like Wisconsin, still prohibit judicial notice for foreign countries' laws, they too consider foreign countries' laws under a question of fact standard. See Yee Lee, 770 N.W.2d at 577-78; Minn. Stat. §§ 599.01, 599.08 (2021) (stating that foreign countries laws must be proved as facts and are not subject to judicial notice). Considering the statutory context of Wis. Stat. § 902.02, our treatment of other states' law as questions of law, and how judicial notice statutes have impacted standards of review in other jurisdictions, Wisconsin courts cannot take judicial notice of foreign countries' laws, and instead, the parties must prove them as facts.

¶37 In all, we do not accept the invitation to alter Wisconsin's standard for interpreting the law of foreign countries. The substance of foreign law remains a question of fact that "must be pleaded and proved as any other fact." Milwaukee Cheese, 40 Wis. 2d at 580. The meaning of a foreign country's law is an issue reserved in the first instance for the circuit court. Wis. Stat. § 902.02(5). On appeal, we review the circuit court's findings of fact under the clearly erroneous standard.

¶38 When reviewing questions of fact, the standard "is highly deferential." Royster-Clark, 290 Wis. 2d 264, ¶11.

> A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence. Therefore, although evidence may have presented competing factual inferences, the circuit court's findings are to be sustained if they do not go

20

against the great weight and clear preponderance of the evidence.

Country Visions Coop. v. Archer-Daniels-Midland Co., 2021 WI 35, ¶19, 396 Wis. 2d 470, 958 N.W.2d 511 (cleaned up).

### B. International Comity

¶39 Unlike many states, Wisconsin has not codified the manner in which judgments from foreign countries may be domesticated and enforced in the state. For instance, Wisconsin has not adopted the Uniform Foreign-Country Money Judgments Recognition Act. Cf. 735 Ill. Comp. Stat. 5/12-644 (2021). Thus, when considering whether to enforce a foreign country's judgment, courts in this state look to the common law and traditional doctrines of comity.

¶40 Under principles of comity, "courts will as a matter of discretion rather than obligation defer to the assertion of jurisdiction or give effect to the judgments of other states or sovereigns out of mutual respect, and for the purpose of furthering the orderly administration of justice." Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians, 2000 WI 79, ¶35, 236 Wis. 2d 384, 612 N.W.2d 709. "Comity, being a rule of practice and not a rule of law, rests upon the exercise of sound judicial discretion," and "[t]he scope of comity is determinable as a matter of judicial policy." Sheridan v. Sheridan, 65 Wis. 2d 504, 510, 223 N.W.2d 557 (1974).

¶41 Because comity is the product of sound judicial discretion and policy, the doctrine cannot readily be distilled into clearly defined rules. See Disconto Gesellschaft v.

21

Terlinden, 127 Wis. 651, 660, 106 N.W. 821 (1906) ("[T]here is no uniform and constant practice of nations as to taking cognizance of controversies between foreigners."); Hilton v. Guyot, 159 U.S. 113, 164 (1895) (noting that "comity is, and ever must be, uncertain; that it must necessarily depend on a variety of circumstances which cannot be reduced to any certain rule" (quotations omitted)). However, over the course of centuries, courts have recognized several well-established reasons for declining to recognize a foreign country's judgment.

¶42 "[R]ights acquired under statute enacted or judgment rendered in one state will be given force and effect in another, unless, as said, against policy or laws of the state, prejudicial to interests of its citizens or against good morals and natural justice." Estate of Steffke v. DOR, 65 Wis. 2d 199, 203, 222 N.W.2d 628 (1974) (quoting Hughes v. Fetter, 257 Wis. 35, 39, 42 N.W.2d 452 (1951), reversed on other grounds, 341 U.S. 609 (1951)). When considering whether to domesticate a foreign judgment, courts may also consider whether parties were "given notice and the opportunity to be heard," whether "the foreign court had original jurisdiction," and whether the foreign court "abided by fundamental standards of procedural fairness." 30 Am. Jur. 2d Executions Etc § 585 (2d ed. 2021); 50 C.J.S. Judgments § 1329 (2021) ("The elements required to establish a prima facie case of entitlement to recognition of a foreign-country judgment are that the rendering court had jurisdiction over the person and subject matter; there was timely notice and an opportunity to present a defense; no fraud

22

was involved; and the proceedings were according to a civilized jurisprudence."); Restatement (Third) of Foreign Relations Law § 482 (1987) (describing the grounds by which a court may refuse to recognize a judgment from a foreign country).

¶43 What is clear is that, when deciding whether to recognize a foreign judgment, courts may not reopen the merits of the case and consider whether foreign courts accurately applied their own law. See Hilton, 159 U.S. at 202 (explaining that comity is supported by the idea that "the whole merits of the case were open, at all events, to the parties, however much they may have failed to take advantage of them, or may have waived any of their rights, a final adjudication has been given that a debt or obligation exists which cannot thereafter in that [foreign] court be disputed, and can only be questioned in an appeal to a higher tribunal"); 30 Am. Jur. 2d, supra ¶42 ("[T]he merits of the case should not be tried anew upon the mere assertion by a party that the judgment was erroneous in law or in fact."); 50 C.J.S., supra ¶42, § 1333 ("It is no ground for impeaching a judgment in personam of a foreign court that it is erroneous in matter of law, or fact.").

¶44 The decision to recognize a foreign country's judgment is ultimately subject to the circuit court's discretion, and we will not disturb the determination "unless there has been an erroneous exercise of discretion." LeMere v. LeMere, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789; see also Daniel-Nordin v. Nordin, 173 Wis. 2d 635, 651, 495 N.W.2d 318 (1993) (holding that, when reviewing the application of comity principles to a

23

deferral of jurisdiction, we determine whether the circuit court "erroneously exercised its discretionary power"); Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians, 2003 WI 118, ¶69, 265 Wis. 2d 64, 665 N.W.2d 899 ("Comity is discretionary, highly fact specific, and reviewable on appeal for erroneous exercise of discretion."). "We will sustain a discretionary act if we find the trial court examined the relevant facts, applied a proper standard of law, and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." Lane v. Sharp Packaging Sys., Inc., 2002 WI 28, ¶19, 251 Wis. 2d 68, 640 N.W.2d 788.

### III. ANALYSIS

¶45 The Hennessys argue that the circuit court incorrectly interpreted Mexican law to allow recovery against them personally under the Mexican judgment. In addition, the Hennessys claim that the circuit court misapplied the doctrine of comity. Wells Fargo disputes both these assertions. It argues that the circuit court accurately interpreted Mexican law and properly applied its discretion to domesticate the Mexican judgment. We will address the two issues in turn.

A.   Interpretation Of Mexican Law

¶46   The Hennessys argue that, under Mexican law, Wells Fargo did not possess a money judgment to domesticate against the Hennessys personally.   They claim that because the loan agreement and note are governed by Wisconsin law, the Mexican courts could not have permitted Wells Fargo to collect any deficiency remaining after sale of the property.   We disagree.

¶47   The circuit court was provided briefing, accepted hundreds of pages of exhibits on Mexican law, and listened for two days of hearings to two qualified experts on Mexican law. Mr. Osuna, the expert Wells Fargo presented, testified in detail that the Mexican judgment included both in rem and in personam relief.   According to Mr. Osuna, Wells Fargo could both obtain the property as collateral and use the Mexican judgment to seek any deficiency remaining after the property is sold.   Notably, the Mexican judgment on its face states that Wells Fargo is owed "the principal amount of US$ 7,500,000.00," as well as interest, fees, expenses, and court costs.   Although the judgment states that if payment is not made the Hennessys must "deliver to [Wells Fargo] the property," the provision does not explicitly exclude the possibility that Wells Fargo is entitled to a deficiency in its money award after the property is sold.

¶48   The Hennessys argue that only the loan document and note allowed Wells Fargo to collect a deficiency; however, those documents are closely tied with the trust agreement.   The contracts repeatedly reference each other.   For instance, the trust agreement stated that the Hennessys must "comply with all

25

obligations [they] assumed under the Loan Documents," and, in the case of default, the Hennessys were obligated to "immediately pay any and all amounts [they] owe[] under the Loan Documents." Wells Fargo attached the loan agreement, the note, and the trust agreement as attachments to its complaint in Mexico, and the Mexican judgment explicitly references amounts owed under the other contracts. Specifically, Wells Fargo is entitled to interest, fees, and expenses "in accordance with what was stipulated in all of the loan documents admitted into court as evidence." To the extent that the Hennessys believe that the Mexican court did not apply its own law correctly or improperly awarded relief under the Mexican judgment, they must address their complaints to Mexican authorities. Hilton, 159 U.S. at 202; 30 Am. Jur. 2d, supra ¶42; 50 C.J.S., supra ¶42, § 1333. We will not sit as a court of review for the judicial systems of other countries.

¶49 While the Hennessys presented an expert with different views on Mexican law, the court cannot conclude that the circuit court's decision to credit Wells Fargo and its expert "is against the great weight and clear preponderance of the evidence." Country Visions Coop., 396 Wis. 2d 470, ¶19. While the Hennessys may have presented "competing factual inferences," that alone does not justify reversal of the circuit court's decision. Id.

¶50 Consequently, we affirm the circuit court's interpretation of Mexican law. The circuit court properly determined that the Mexican judgment allowed Wells Fargo to

26

collect a money judgment from the Hennessys personally and seek any deficiency after foreclosure on the property is complete.

## B. International Comity

¶51 The Hennessys argue that the circuit court should not have domesticated the Mexican judgment because it was insufficiently specific as to the amounts the Hennessys owed. They argue that the judgment does not contain a "sum certain" and leaves open additional calculations of deficiencies, interest, fees, and expenses owed to Wells Fargo. Thus, according to the Hennessys, the Mexican judgment is not final.

¶52 The Hennessys do not contend that the Mexican judgment is "against [the] policy or laws of [this] state," nor do they claim that the Mexican courts lacked jurisdiction. Estate of Steffke, 65 Wis. 2d at 203. In addition, they do not assert that the Mexican proceedings lacked basic procedural guarantees, such as notice and the opportunity to be heard.

¶53 The circuit court found that the Mexican judgment permitted Wells Fargo to collect the amounts owed to the bank and receive the property as collateral. According to the circuit court, "[a]n attempt to recover a difference in value . . . is not a new action that seeks a new judgment; rather it is an action that simply seeks to enforce the previous judgment." Thus, "the Mexican [j]udgment is a valid and enforceable personal judgment against the Hennessys under the laws of Mexico." No further appeals can be taken regarding the Mexican judgment, and for all intents and purposes, it

27

represents the final resolution of the claims brought by Wells Fargo against the Hennessys in Mexico.

¶54 These findings were well supported by the record. Mr. Osuna testified explicitly that the Mexican judgment was final, and actions undertaken by Wells Fargo to calculate and collect deficiencies, interest, expenses, and fees were simply procedures to enforce the preexisting judgment. The judgment itself identifies amounts owed to Wells Fargo, namely $7.5 million, and the property subject to forfeiture. As explained above, the circuit court's findings of fact as to Mexican law were not clearly erroneous.

¶55 Nonetheless, the Hennessys argue that the Mexican judgment was not final enough, citing the Restatement's discussion on the meaning of "final judgment." Restatement (Third) of Foreign Relations Law, supra ¶42, § 481 cmt. e ("A final judgment [subject to domestication] is one that is not subject to additional proceedings in the rendering court other than execution.").

¶56 In its reasoning supporting recognition of the Mexican judgment, the circuit court accurately described the facts of the case. It cited the Restatement's definition of a final judgment and thoroughly described the Hennessy's arguments against domestication. Point by point, the circuit court rejected the Hennessys' contentions. The circuit court explained that the Mexican judgment must be given due respect under principles of comity because the judgment definitively established personal liability for a sum of money against the

Hennessys and in favor of Wells Fargo, even though "certain sums must still be determined through the process of executing the [j]udgment." The circuit court cited persuasive authority in support of its decision. See Societe d'Amenagement et de Gestion de l'Abri Nautique v. Marine Travelift Inc., 324 F. Supp. 3d 1004, 1012 (E.D. Wis. 2018) (applying Wisconsin law and recognizing a French judgment despite the fact that the final amount owed "is subject to further computation"); see also Ingersoll Mill. Mach. Co. v. Granger, 833 F.2d 680, 686 (7th Cir. 1987) (holding, in the analogous Uniform Foreign Money Judgment Recognition Act context, that a judgment was "final" and granted "recovery of a sum of money" despite the fact that additional calculations of interest and exchange rates were necessary); Nat'l Aluminum Co., Ltd. v. Peak Chem. Corp., 132 F. Supp. 3d 990, 998-1000 (N.D. Ill. 2015) (applying Illinois' Uniform Foreign Country Money Judgment Recognition Act and rejecting an argument that "further calculations, such as any applicable interest due," prevented the court from recognizing a foreign judgment).

¶57 Upon a review of the record, this court cannot conclude that the circuit court erroneously exercised its discretion in domesticating the Mexican judgment. The circuit court accurately examined the facts, recognized the applicability of the comity doctrine, "us[ed] a demonstrative rational process" in applying the doctrine, and came to a reasonable conclusion. Lane, 251 Wis. 2d 68, ¶19. We affirm the circuit court's judgment in favor of Wells Fargo.

29

IV.   CONCLUSION

¶58   The Hennessys argue that the circuit court incorrectly held that, under Mexican law, the foreign judgment was valid and personally enforceable against them.   In the process, the Hennessys ask that this court alter the standard for reviewing issues of a foreign country's law and consider such issues de novo as questions of law.   In addition, the Hennessys claim that the circuit court should not have domesticated the Mexican judgment under principles of comity.

¶59   In Wisconsin, a foreign country's law must be proven before a circuit court as a question of fact.   We reaffirm this principle and decline the Hennessys' invitation to consider foreign law de novo.   Upon a review of the record, the court cannot conclude that the circuit court's interpretation of Mexican law was clearly erroneous.   Further, the circuit court did not erroneously exercise its discretion by choosing to recognize the Mexican judgment in Wisconsin.   Thus, the court of appeals is affirmed, and Wells Fargo's judgment against the Hennessys was properly domesticated.

*By the Court.*—The decision of the court of appeals is affirmed.

¶60 REBECCA FRANK DALLET, J. (*concurring*). I join the majority opinion but write separately only because I would focus on Wis. Stat. § 902.02(5), which requires Wisconsin courts to treat foreign countries' laws as questions of fact that must be proven to the circuit court. Therefore, I respectfully concur.

¶61 From statehood through the early 1920s, Wisconsin consistently treated all other jurisdictions' laws as questions of fact that needed to be pleaded and proven. See Wis. Stat. ch. 98, § 56 (1849) ("The existence and the tenor or effect of all foreign laws may be proved as facts by parol evidence."); Rape v. Heaton, 9 Wis. 328, 337-41 (1859); Hite v. Keene, 149 Wis. 207, 217, 134 N.W. 383 (1912). This rule applied equally to the laws of other states and foreign countries and was, at the time, the majority (if not universal) approach in other states and in the federal courts. See Heaton, 9 Wis. at 337-41; Hite, 149 Wis. at 217; see also, e.g., Arthur R. Miller, Federal Rule 44.1 and the "Fact" Approach to Determining Foreign Law: Death Knell for a Die-Hard Doctrine, 65 Mich. L. Rev. 613, 621-22 (1967). Beginning in the early 1920s, however, the legislature mandated that Wisconsin courts use a question-of-law approach, but only as to other states' laws; foreign countries' laws remained questions of fact. The legislature accomplished this change by directing Wisconsin courts to "take judicial notice" of other states' laws. See Wis. Stat. ch. 176, § 4135m (1921) (other states' statutes); Wis. Stat. § 328.01(1) (1947) (other states' common law and statutes).

1

¶62 To the modern reader, it might seem strange that "judicial notice" in this context indicated that courts should treat other states' laws as questions of law, not fact. That's because in contemporary usage, "judicial notice" almost always refers to judicial notice of facts (sometimes called "judicial notice of adjudicative facts"). See Wis. Stat. § 902.01(1)-(2) (allowing courts to forgo the rules of evidence for facts that are beyond reasonable dispute, generally known, and can be easily ascertained from sources "whose accuracy cannot reasonably be questioned"). But historically, "judicial notice" has also referred to judicial notice of law. Although "judicial notice of law" is a phrase seldom used today, the concept is part of everyday legal practice. It refers to the unremarkable fact that the rules of evidence do not apply to judges' citations to statutes or judicial opinions. Judges may simply research and cite the applicable law, and the parties are not required to prove that law like a fact. See Getty Petroleum Mktg., Inc. v. Cap. Terminal Co., 391 F.3d 312, 324 (1st Cir. 2004) (Lipez, C.J., concurring) ("Without acknowledging it (and perhaps without even thinking about it) courts take judicial notice of law every time they cite a statute or judicial decision."); see also 2 McCormick on Evidence § 335 (8th ed. 2020).

¶63 Judicial notice remains the norm when it comes to other states' laws. Indeed, Wis. Stat. § 902.02(1) requires that approach. And when a circuit court takes judicial notice of another state's law, appellate courts treat the circuit court's resulting conclusions like other legal conclusions,

2

reviewing them independently (or de novo).  See, e.g., Wis. Pharmacal Co., LLC v. Neb. Cultures of Cal., Inc., 2016 WI 14, ¶¶12-13, 16, 57-84, 367 Wis. 2d 221, 876 N.W.2d 72.

¶64 Foreign countries' laws, however, are treated differently.  In Wis. Stat. § 902.02, which adopted the Uniform Judicial Notice of Foreign Law Act, the legislature explicitly excluded foreign countries' laws from the judicial-notice provisions:

> (5)  Foreign country. The law of a jurisdiction other than those referred to in sub. (1) shall be an issue for the court, but shall not be subject to the foregoing provisions concerning judicial notice.

§ 902.02(5).  On its face, § 902.02(5) might appear to require no particular approach to foreign countries' laws.  After all, just because foreign countries' laws are not subject to the same rules as other states' laws does not necessarily prohibit courts from taking judicial notice of foreign countries' laws in all circumstances.

¶65 But the broader statutory context tells a different story.  See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.  Chapter 902 sets forth the exhaustive rules for when Wisconsin courts may take judicial notice of either facts or law.  Wisconsin Stat. § 902.01 deals with judicial notice of facts, including when taking such notice is within a court's discretion and when it is mandatory.  The other two provisions in Chapter 902 discuss judicial of notice of law.  Section 902.03 specifies when circuit courts may and when they shall take judicial notice of Wisconsin county and municipal ordinances and rules and

3

orders of Wisconsin and federal agencies. Section 902.02, Wisconsin's version of the Uniform Judicial Notice of Foreign Law Act, directs Wisconsin courts to "take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States." § 902.02(1). Contrast that with the explicit exclusion of foreign countries' laws from the judicial notice provisions in § 902.02(5). Nowhere in Chapter 902 does the legislature provide for judicial notice of foreign countries' laws. This context leads to a single conclusion: Wisconsin courts cannot take judicial notice of foreign countries laws; the parties must prove them as facts.[1] Cf. Switzer v. Weiner, 230 Wis. 599, 601-02, 280 N.W. 509 (1939).

¶66 This conclusion is bolstered by the Wisconsin cases addressing Wis. Stat. § 902.02 and is consistent with the practice in other states that have identical statutes. This court first mentioned § 902.02(5) (then numbered Wis. Stat. § 328.01 (1961-62)) in Witt v. Realist, Inc., 18 Wis. 2d 282, 289 & n.5, 118 N.W.2d 85 (1962), citing it as a reason why we could not take judicial notice of German law. Although the court did not analyze in depth the meaning of § 902.02(5), its holding reinforces the view that § 902.02 requires foreign countries' laws to be treated as questions of fact. A few years later in Milwaukee Cheese Co. v. Olafsson, 40 Wis. 2d 575, 579-80, 162 N.W.2d 609 (1968), we held

---

[1] This reading also makes sense in light of the legislature's practice, unbroken since statehood, of specifying how various types of laws may be proven. See, e.g., Wis. Stat. ch. 98, § 56 (1849); Wis. Stat. §§ 327.05-.06 (1925-26); Wis. Stat. § 328.01 (1927-28); Wis. Stat. § 889.06.

4

that § 902.02 (then numbered § 891.01 (1967-68)) did not alter the rule that "the laws of foreign countries must be pleaded and proved as any other fact." Id. The court of appeals has been even more explicit, explaining that under § 902.02(5) "a court may not take judicial notice of foreign country's law" and that, as a result, "the issue of what the law of a foreign country requires is one of pure fact that must be proved." Griffin v. Mark Travel Corp., 2006 WI App 213, ¶4, 296 Wis. 2d 642, 724 N.W.2d 900. Moreover, other states that retain the Uniform Judicial Notice of Foreign Law Act also treat foreign countries' laws as questions of fact, not subject to judicial notice. See DeLima v. Tsevi, 921 N.W.2d 89, 95 (Neb. 2018); Ramsey County v. Yee Lee, 770 N.W.2d 572, 577-78 (Minn. Ct. App. 2009); Bianchi v. Savino Del Bene Int'l Freight Forwarders, Inc., 770 N.E.2d 684, 695 (Ill. Ct. App. 2002); James v. James, 45 S.W.3d 458, 462 (Mo. Ct. App. 2001).

¶67 Because Wis. Stat. § 902.02(5) requires foreign countries' laws be treated as questions of fact, any change to that standard must come through legislation. In fact, the states that now allow judicial notice of foreign countries' laws have done so either by repealing the Uniform Act or by adding additional statutes or rules. See, e.g., Fla. Stat. Ann. § 90.202(4); Cal. Evid. Code §§ 450-52; N.Y. C.P.L.R. 3016, 4511. In making neither change, Wisconsin is an outlier——by a

5

wide margin.[2] Nevertheless, we are bound by § 902.02(5), and the analysis in this case should be rooted in that statute.

¶68 I am authorized to state that Justices BRIAN HAGEDORN and JILL J. KAROFSKY join this concurrence.

---

[2] Exact numbers are hard to come by, but it appears that at least 41 states have adopted statutes or rules that either explicitly allow judicial notice of foreign countries' laws, or specify that rulings based on foreign countries' laws are to be treated as rulings on questions of law, or both. Ala. R. Civ. P. 44.1; Alaska R. Evid. 202(c)(4); Ariz. R. Civ. P. 44.1; Ark. R. Civ. P. 44.1(c); Cal. Evid. Code §§ 450-52; Colo. R. Civ. P. 44.1; Conn. Gen. Stat. § 52-163a; Del. Ch. R. 44.1; Fla. Stat. Ann. § 90.202(4); Ga. Code Ann. § 9-11-43; Haw. R. Civ. P. 44.1; Ind. Tr. P.R. 44.1; Kan. Stat. Ann. § 60-409(b); La. Code Evid. Ann. art. 202; Me. R. Civ. P. 44A; Md. Code § 10-501; Mass. R. Civ. P. 44.1; Mich. R. Evid. 202; Miss. Code § 13-1-149; Mont. R. Civ. P. 44.1; Nev. R. Civ. P. 44.1; N.J. R. Evid. 201(a); N.M. R. Ann. 1-044; N.Y. C.P.L.R. 3016, 4511; N.C. R. Civ. P. § 1A-1, R. 44.1; N.D. R. Civ. P. 44.1; Ohio Civ. R. 44.1; Okla. Stat. tit. 12 § 2201; Or. Rev. Stat. § 40.090(6); Pa. Cons. Stat. § 5327; R.I. R. Civ. P. 44.1; S.C. R. Civ. P. 44; S.D. Codified Laws § 19-8-2; Tenn. R. Evid. 202(b); Tex. R. Evid. 203; Utah R. Civ. P. 44(f); Vt. R. Civ. P. 44.1(a); Va. Stat. § 8.01-386; Wash. Super. Ct. Civ. R. 44.1; W. Va. R. Civ. P. 44.1; Wyo. R. Civ. P. 44. The federal courts have done the same. See Fed. R. Civ. P. 44.1.