COURT OF APPEALS

DECISION

DATED AND FILED

September 27, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP819**

Cir. Ct. No. **2022SC1433**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

JAIME A. FIEBIG,

PLAINTIFF-APPELLANT,

V.

JOSHUA MASON AND MOLLY MASON,

DEFENDANTS-RESPONDENTS.

---

APPEAL from a judgment of the circuit court for Fond du Lac County: LAURA J. LAVEY, Judge. *Affirmed*.

¶1 NEUBAUER, J.[1] Jaime A. Fiebig appeals from a judgment dismissing his small claims action against Joshua and Molly Mason. Fiebig sued

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

the Masons, alleging that Joshua negligently ran over a rock while mowing his lawn, causing the rock to fly through the air and dent Fiebig's garage door. Following a bench trial, the trial court concluded that Fiebig had not carried his burden of proving that Joshua had acted negligently or that any negligence had caused the damage to the garage door. For the reasons set forth below, this court affirms the judgment.

## *Background*

¶2      Fiebig, who appeared pro se, testified that he saw Joshua sitting on his lawn mower talking to a neighbor when Fiebig and his wife Susan returned to their home on the evening of June 12, 2022. As the Fiebigs ate dinner inside their home, Fiebig could hear Joshua mowing but could not see him. Fiebig testified that he heard an "unmistakabl[e] crunch sound of the mower hitting something" followed several seconds later by "this thunk on the side of our house." Fiebig went outside and saw Joshua "kind of driving all over the place with his headphones on on this big mower of his." He also saw a rock next to his garage door and a dent in the door, which prompted him to try to get Joshua's attention. Fiebig testified initially that he "assume[d]" the rock was thrown from an "open dirt patch" in Joshua's yard, which Fiebig described as containing "rocks amongst the soil" and "weeds and stuff around the perimeter." Fiebig later admitted that he did not know where exactly Joshua was mowing and he could have been anywhere from seventy to "hundreds of feet away."

¶3      Fiebig testified that Joshua came over to the Fiebigs' house after Fiebig got his attention and the two men "talked a little bit." Susan testified that Joshua told them that he would submit a claim to his insurance company for the

2

damage to the door and that he provided his insurer a picture he took "from where he thinks it happened."

¶4 On cross-examination, Fiebig acknowledged that he would have felt the contact between his lawn mower and a rock the size of the one he found by his garage door and that a rock of that size "may or may not" have damaged the mower. When asked if he had "done any sort of measurements to see if it's even feasible for a rock to be thrown that far from a lawn mower on Mr. Mason's property," Fiebig stated that if Joshua

> was right on the edge of the lot line, I would think no problem, that rock could skip, bounce, do all kinds of crazy things and bounce up and hit that. I don't know. It could have flown clear through the air. I'm not sure how it got there. All I know is that I heard the crunch of the mower, and then I heard the thud of the rock, and it was clearly laying there until Josh picked it up.

¶5 Joshua acknowledged that he was mowing his yard on the date in question but denied mowing "the dirt area." He did not recall hitting any rocks big enough to "affect [the] mower" and agreed that he takes care to avoid rocks when mowing. Joshua testified that he wore headphones and listened to a Brewers game while mowing but said he would have heard and felt his mower hit a rock the size of the rock alleged to have hit Fiebig's garage door. He testified that a rock of that size would "[m]ost certainly" have damaged his mower and that he did not observe any dents in the blade or the deck of his mower after the incident.

¶6 Joshua was asked about his conversation with the Fiebigs after they got his attention, and he denied that they said anything "about a crunch, a thud, or anything that would indicate that they would have heard [him] hit a rock." Joshua also testified that he used a computer program owned by the city of Fond du Lac to calculate the approximate distance between where he believed he was mowing

and the Fiebigs' garage door, which produced an approximate distance of between 284 and 292 feet.

¶7 The trial court found Fiebig's account of finding the dent in his garage door after hearing "this terrible noise and [then] … the thud" to be credible, and stated that "[i]t's very clear that something happened to the Fiebigs' garage door." But the court also found credible Joshua's testimony that he neither felt nor heard "anything with respect to his lawn mower that day … that gave him cause for concern when mowing his lawn." In addition, the court found the distance calculated by Joshua between where he may have been mowing and the garage door to be "a significant distance to hurl that rock toward the garage door," even while acknowledging Fiebig's testimony that Joshua could have been much closer.

¶8 In the end, the court identified a "big issue" concerning causation. The court explained that Fiebig had the burden "to show that there was something that Mr. Mason did in which he was acting negligently or his actions caused the rock to hit your garage door and cause those damages[.]" But in the court's view,

> there was nothing to suggest that there was any evidence as to where Mr. Mason was, that he did in fact mow the area closer to the Fiebigs' property such that his mowing of that lawn could have gone over a rock and hurled it at the garage door to cause that damage.

Because "no one saw anything specifically that showed that [Joshua] did in fact do that or … was somehow negligent in his use of his lawn mower that caused that rock to be thrown," the court concluded that Fiebig had not carried his burden.

## *Discussion*

¶9 Where the trial court conducts a bench trial, it must "find the ultimate facts and state separately its conclusions of law thereon." WIS. STAT.

§ 805.17(2); *see also* WIS. STAT. § 799.04(1) (stating that "the general rules of practice and procedure in chs. … 801 to 847" apply to small claims actions). In reviewing the trial court's decision, this court's role "is not to retry the case, but rather to determine whether the trial court's findings are clearly erroneous." *Holz v. Busy Bees Contracting, Inc.*, 223 Wis. 2d 598, 606, 589 N.W.2d 633 (Ct. App. 1998). "A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence." *Hennessy v. Wells Fargo Bank, N.A.*, 2022 WI 2, ¶38, 400 Wis. 2d 50, 968 N.W.2d 684 (citation omitted). In reviewing the trial court's findings, this court must give "due regard … to the opportunity of the trial court to judge the credibility of the witnesses." Sec. 805.17(2).

¶10 Fiebig does not argue that any of the trial court's findings are clearly erroneous. He simply assumes that Joshua's lawn mower launched a rock that hit his garage door and speculates that Joshua could have been mowing a portion of his property close to the garage door when the rock was launched. This is not sufficient to show, as he must, that the court's findings related to negligence and causation were against the great weight and clear preponderance of the evidence.

¶11 "An essential element of a cause of action for negligence is negligent conduct." *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 732, 275 N.W.2d 660 (1979). Negligent conduct is conduct that "foreseeably creates an unreasonable risk to others." *Id.* The trial court noted that Fiebig had not presented evidence to suggest that Joshua negligently operated his lawn mower—that is, in a manner that foreseeably created a risk to anyone. This court agrees. While there was testimony that Joshua was mowing his yard at the time Fiebig heard the "thud," Fiebig introduced no evidence that Joshua was operating the mower at an excessive speed or otherwise unsafely. His supposition that Joshua operated the mower over a patch of dirt in his yard that contained rocks was

speculation, and Joshua specifically denied doing so. Moreover, the court found Joshua's testimony that he neither heard nor felt anything of concern while operating the mower credible. This court cannot second-guess the trial court's credibility determination, and given the evidence presented, the trial court's finding that Fiebig did not present evidence of negligent conduct is not clearly erroneous.

¶12    Another element Fiebig was required to prove is a causal connection between Joshua's allegedly negligent conduct and the damage to his garage door. *See Gritzner v. Michael R.*, 2000 WI 68, ¶19, 235 Wis. 2d 781, 611 N.W.2d 906. It is not enough for Fiebig to prove that the rock he found near the garage door hit the door and damaged it. Nor is it enough to prove that the rock was thrown into the door by Joshua's lawn mower. Fiebig had to prove that Joshua *negligently operated* his lawn mower and that his *negligent operation* caused the mower to launch the rock into the garage. The trial court found Fiebig had not done so, and Fiebig does not develop an argument that this finding is clearly erroneous. There is thus no basis for this court to disturb the trial court's finding on the element of causation.

¶13    Finally, Fiebig notes that Joshua filed a claim with his homeowner's insurance company and "offered to pay something," suggesting he took these steps because he "felt responsible" for the damage to the garage. To the extent Fiebig believes these acts were enough to establish Joshua's liability, he is wrong. Filing a claim with one's insurer is not an admission that one acted negligently and bears legal responsibility for property damage caused by that alleged negligence. In addition, offers of settlement are "not admissible to prove liability," *see* WIS. STAT. § 904.08, and the trial court correctly informed Fiebig that evidence of such an offer in this case was not relevant.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.