COURT OF APPEALS
DECISION
DATED AND FILED

October 19, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1002-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2014CF1105

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TOMMY M. CANADY,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County:  EMILY S. MUELLER, Judge.  *Affirmed*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Tommy M. Canady appeals a judgment of conviction for first-degree intentional homicide by the use of a dangerous weapon and armed robbery; he also appeals an order denying his motion for postconviction relief. At Canady's trial, the trial court admitted into evidence a rap song and written rap lyrics authored by Canady, which the State argued collectively referenced the victim's name and the circumstances of the homicide. Canady argues the court erred by admitting the written rap lyrics into evidence. He also argues his trial attorney was constitutionally ineffective by failing to obtain an isolated vocal track of the rap song, failing to request a limiting instruction regarding the jury's use of the rap lyrics, and failing to request a lesser-included instruction for felony murder. We reject his arguments and affirm.

## BACKGROUND

¶2    On July 29, 2014, Semar McClain was discovered deceased as a result of a single, close-range gunshot wound to the head. His body was located in a backyard on Blake Avenue near an alley. A witness testified that approximately one to two hours before McClain's body was discovered, he had seen McClain nearby with some other individuals including Canady. The individuals appeared to be trying to "one up[]" each other: McClain carried a black .380 caliber pistol, and a member of the group was asking him to display his gun. The witness testified McClain left with the group. McClain's gun was not recovered after his death.

¶3    Another witness testified that, on the same afternoon, he kicked a group of individuals that included Canady and McClain out of the hallway in his building because they were playing with guns. At trial, he testified he saw McClain with a gun, but he denied seeing Canady with one. However, the State

2

introduced a police interview in which the witness stated that he saw Canady carrying a .38 Special revolver. During the interview, the witness also told police that he overhead a discussion about Canady acquiring McClain's firearm; McClain wanted to sell his gun, whereas Canady wanted to trade his gun for McClain's. The guns were not of equal value: McClain's was worth more.

¶4 During a search of Canady's residence, police discovered a Hi-Point .380 caliber pistol in a cooler and a .38 Special revolver hidden inside a teddy bear. A .38 caliber bullet was recovered from McClain's body; it had rifling markings that were consistent with the .38 Special recovered from Canady's residence. No bullet casing was found at the scene of the murder.

¶5 McClain's stepfather testified that after McClain's murder, he directed law enforcement to a website—SoundCloud—that contained a song he believed was about McClain's execution. The rap song, titled "I'm Out Here," was played at trial, and McClain's stepfather testified he heard "Semar" mentioned in it. The lead investigator in the case listened to the track at regular and slow speeds. He testified he believed the lyrics were as follows:

> [T]he lyrics that I hear are, … catch Semar slipping, walking through the alley. Something similar to, nigga tried to run, tried to run like an athlete, but bullets, when bullets were on track meets, bullet hit a nigga's head, watch him fall to his toes, nigga think he's the shit, now he's getting exposed.[1]

The website profile attached to the track included a picture of Canady pointing a .380 handgun at the camera. Canady disputed that the song included a reference to

---

[1] This court has listened to the recordings submitted into evidence at trial and at the postconviction hearing. While certain portions of the lyrics are difficult to understand, the on-the-record explanations of the track contents are sufficient for illustrative purposes.

"Semar," arguing the words were difficult to make out. The jury requested to hear both the regular- and slow-speed versions during its deliberations.

¶6     Canady's cellmate at the Racine County Jail testified that Canady liked to rap about "dark things, like murder and killing." He overheard Canady trying to come up with words that rhymed with McClain. When Canady was taken out of his cell, he left behind rap verses that were eventually confiscated by authorities. A full recitation of the lyrics is not necessary; suffice it to say, investigators believed there were parallels to McClain's homicide in the writings, including the following references: "Blake Street," "a robbery," a "funeral," "[b]lood on my sneaks, that's from his head leaking[,]" "death season, 2014[,]" a victim getting "clapped" and having "no face on him[,]" and "[h]is last day, I took that. I'm riding around with two straps."[2]

¶7     Canady was convicted and sentenced to life in prison with extended supervision eligibility after fifty years. He filed a postconviction motion seeking postconviction discovery from a laptop computer seized during the search of his residence. He also asserted he was entitled to a new trial based on ineffective assistance of trial counsel and because the trial court erred in admitting the written rap lyrics.

¶8     The postconviction motion disclosed that during the trial, Canady had asked his trial counsel to obtain the track recording of "I'm Out Here" from his laptop and improve the audio quality by "stripping" out the rhythms and music, leaving only the vocal track. A laptop had been previously sent to the Wisconsin

---

[2] A "strap" is a reference to a firearm.

State Crime Lab, which reported nothing of evidentiary value on it, including any songs associated with the application named "GarageBand" that Canady had used to record music. Trial counsel had been unsuccessful in gaining access to the laptop during the overnight period between two trial dates. The motion argued Canady's trial counsel was constitutionally ineffective for failing to seek pretrial discovery of the track on the laptop, failing to request a limiting instruction regarding the use of the rap lyrics at trial, and failing to request a lesser-included felony murder instruction for the intentional-homicide charge.

¶9   A supplemental postconviction motion revealed that there was, in fact, a vocal-only track of "I'm Out Here" in existence at the time of trial. There were two white Apple MacBooks seized in connection with the police investigation into McClain's murder: one belonging to Canady and one belonging to another individual. The police had inadvertently sent the wrong laptop to the State Crime Lab; therefore, the contents of Canady's laptop had never been analyzed. When the State Crime Lab examined the laptop in 2020, several songs were located, including the vocal-only track of "I'm Out Here." Canady argued the vocal track, considered alongside the recordings of other songs, demonstrated Canady had used the word "mawg,"[3] not "Semar" or "Mar[.]"

¶10   The trial court held a *Machner* hearing,[4] after which it denied Canady's postconviction motions. It concluded the written rap lyrics were properly admitted at trial on the basis that they were "more than generalized

---

[3] Canady testified that "mawg" is "hood slang" for "an opposition to us, like somebody from the other side."

[4] *See* ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

5

depictions of violence" and arguably reflected specific aspects of McClain's murder.

¶11    The trial court also rejected Canady's ineffective assistance claims. First, regarding trial counsel's failure to examine the laptop, the court found that, while the vocal-only track made some words easier to understand, "with respect to the critical alleged reference to 'Semar,' the isolated vocal track makes the word no more clear than the full SoundCloud version of 'I'm Out Here' that was played to the jury." Thus, although the court regarded trial counsel as deficient for failing to investigate GarageBand and discover the vocal-only track on the laptop, it determined Canady suffered no prejudice because "the jury would still have to make a determination from an unclear lyric, whether it was from the SoundCloud recording or the vocal track." Second, regarding the failure to request a limiting instruction about the proper purposes for which the rap lyrics could be considered, the court concluded Canady's trial counsel was not deficient because he made a "considered, rational decision" not to make such a request out of fear that a jury instruction would merely highlight the evidence. Third, the court determined Canady's trial counsel was not constitutionally ineffective for failing to request a lesser-included instruction for felony murder as the theory of defense was that Canady was not present at the scene, and counsel did not want to risk the jury interpreting the instruction as a concession that he was there. Canady now appeals.

**DISCUSSION**

¶12    The issues Canady raises on appeal fall into two categories. First, he challenges the trial court's evidentiary decision to admit the written rap lyrics at

trial. Second, he alleges various instances of constitutionally ineffective assistance by his trial counsel. For the following reasons, we reject all of these assertions.

## I. Admissibility of the Rap Lyrics

¶13 Canady first challenges the admissibility of the written rap lyrics. A trial court's decision to admit evidence is reviewed for an erroneous exercise of discretion. *Martindale v. Ripp*, 2001 WI 113, ¶29, 246 Wis. 2d 67, 629 N.W.2d 698. Under that standard, we will uphold the ruling if we conclude the trial court examined the relevant facts, applied the proper standard of law, and, using a demonstrated rational process, reached a reasonable conclusion. *State v. Abbott Lab'ys*, 2013 WI App 31, ¶31, 346 Wis. 2d 565, 829 N.W.2d 753.

¶14 Canady argues the lyrics were irrelevant and unduly prejudicial.[5] As set forth below, we first conclude the trial court reasonably regarded the written lyrics as relevant, probative evidence regarding whether Canady committed the homicide. Second, the court reasonably concluded the lyrics' probative value was not substantially outweighed by the danger of unfair prejudice. Accordingly, the court did not err in admitting the written rap lyrics into evidence.

¶15 Evidence is relevant, and therefore generally admissible, if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. Certain aspects of the written rap

---

[5] Trial counsel sought, unsuccessfully, to exclude the evidence as impermissible character evidence under WIS. STAT. § 904.04 (2019-20).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

lyrics can be reasonably interpreted as a reference to McClain's shooting, including specific references to the location, date, and manner of the homicide. Interpreted in such a fashion, the lyrics make it more probable that Canady was the shooter. The trial court did not erroneously exercise its discretion when it concluded the lyrics were relevant evidence.

¶16    Canady's argument to the contrary is unpersuasive. He suggests the lyrics are irrelevant because they are "overwhelmingly generic [in] nature" and include descriptions of events that are not reflected in the circumstances of McClain's homicide. But relevance is not dependent on a perfect alignment of lyrical prose with the facts of the crime. Rather, as the State correctly notes, the "any tendency" standard "reflects the broad definition of relevancy and the resulting low threshold for the introduction of evidence that the relevancy definition creates." *State v. Richardson*, 210 Wis. 2d 694, 707, 563 N.W.2d 899 (1997).

¶17    Here, contrary to Canady's argument that these were "stock rap lyrics," the trial court could reasonably conclude certain lyrics were specific factual references to McClain's murder. Having made that finding, it was within the court's province to conclude that the jury should be tasked with considering the context of the lyrics and deciding whether to draw the inference that Canady was involved in the homicide.

¶18    The trial court's conclusion that the written lyrics contained specific references regarding the McClain homicide also cuts against Canady's assertion that the lyrics were unfairly prejudicial. Relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by the danger of unfair

prejudice[.]" WIS. STAT. § 904.03. Again, this determination is the trial court's to make in the first instance.

¶19    Canady essentially asks this court to declare as a matter of law that the lyrics were "little more than improper propensity evidence." He argues that none of the lyrics were "so unique or specific to link to this case rather than another robbery or shooting[,]" and therefore the lyrics had "very weak probative value[.]" Against that weak probative value, he argues the risk of unfair prejudice was substantial because the lyrics contain "coarse and profane descriptions of … violent criminal activity" that "overwhelm[]" the specific references at issue with highly inflammatory content.

¶20    This argument, whatever its merit, does little to persuade us that the trial court erroneously exercised its discretion when deeming the written lyrics admissible. Canady simply disagrees with the court (and with the State) about the degree to which the lyrics can be interpreted as conforming to the facts of McClain's homicide. The court acknowledged Canady's concern that the introduction of generally violent rap lyrics might make the jury "think this must be some bad guy[,]" and it also acknowledged that the lyrics were prejudicial. Importantly, however, the court concluded the lyrics were not *unfairly* prejudicial, and they did not rise to the level of impermissible character evidence. Our review of the record confirms the court's decision was one that a reasonable judge could reach by consideration of the relevant law and facts and by a process of logical reasoning.

¶21    Further buttressing the notion that the trial court appropriately exercised its discretion here are the proffered lyrics that were *not* admitted at trial. After the court made its examination and gave its analysis of the first set of lyrics,

the State voluntarily withdrew its request to admit other lyrics, conceding "they're a bit more generalized about firing guns and shooting in neighborhoods and hitting people up. So they're not as direct toward[] [McClain's homicide]." The State's response strongly suggests the court applied a logical process and reached a reasonable conclusion when analyzing whether the lyrics bore a sufficient connection to the factual record.

## II. Ineffective Assistance of Trial Counsel

¶22 The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* We review an ineffective-assistance-of-counsel claim using a mixed standard of review. *Id.*, ¶25. The trial court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.* If the defendant fails to establish either prong, we need not address the other. *Id.*

¶23 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

### A. Failure to Obtain Isolated Vocal Track

¶24    Canady asserts the isolated vocal track from "I'm Out Here" "establish[es] he is not saying 'Semar' but, as he told his lawyer before trial, the word 'mawg.'"  From this, he argues that a reasonably prudent attorney would have investigated the GarageBand app, discovered that GarageBand creates separate tracks, and obtained the laptop to review it for evidence.  Because his trial counsel failed to do those things, Canady argues his conviction was obtained without the assistance of a constitutionally effective attorney.

¶25    We agree with the State that in reviewing this issue, the trial court's findings regarding the words on the recording are subject to the "clearly erroneous" standard of review.  This is the standard of review we typically apply to findings of fact.  *State v. Doss*, 2008 WI 93, ¶23, 312 Wis. 2d 570, 754 N.W.2d 150.  Recordings such as those here, which required the aid of testimony and extensive argument to interpret, are not analogous to documentary evidence, which we may review using our own independent judgment.  *See State v. Schmitt*, 2012 WI App 121, ¶9, 344 Wis. 2d 587, 824 N.W.2d 899.

¶26    Under the clearly erroneous standard, we will sustain the trial court's factual finding unless it is against the great weight and clear preponderance of the evidence.  *Hennessy v. Wells Fargo Bank, N.A.*, 2022 WI 2, ¶38, 400 Wis. 2d 50, 968 N.W.2d 684.  The court's finding that the isolated vocal track is unclear

11

regarding whether Canady said "mawg"[6] or "Semar" is supported by the evidentiary record, including the recordings at issue. While we recognize Canady's argument that he "does not speak the King's English[,]" we have no basis to overturn the court's determination that the recording suffers from a lack of clarity and that there is a reasonable interpretation of the lyrics that references McClain.

¶27 With that in mind, even if Canady's trial counsel was arguably deficient in failing to investigate and discover the isolated vocal track, Canady has failed to establish prejudice arising from that deficiency. His arguments are predicated on the assertion that the isolated vocal track substantially clarifies the lyrics of "I'm Out Here"—at least enough to determine the song did not refer to McClain. Thus, for example, Canady argues that, with the isolated vocal track in hand, trial counsel could have objected to the admission of the recording altogether as failing to reference the specific facts of McClain's homicide. Alternatively, Canady suggests the "vocal tracks would have bolstered trial counsel's argument to the jury that the song does not refer to [McClain]."

¶28 We are unpersuaded. As the State points out, it is highly unlikely, given the trial court's factual findings, that Canady could have successfully excluded the rap recording altogether. Accordingly, not much would have changed about the trial: the parties would have argued what they believed the

---

[6] Canady concedes there is an "apparent lack of a distinctly hard 'g' at the end of 'mawg' on the tracks." He explains that rap lyrics often involve the slurring and dropping of syllables and consonants, which is why the same word may sound different in different places of the same song or in different songs. While Canady presents a reasonable hypothesis as to why the trial court heard an "r" sound in "mawg," that argument is for the factfinder and not an error-correcting court.

words on the recording were, and it would have been up to the jury to decide. Canady has failed to establish a reasonable probability that any "bolstering" effect the isolated vocal track might have had when arguing the lyrics' meaning would have caused a factfinder to doubt Canady's guilt.

### B. Failure to Request Limiting Instruction

¶29    Canady also argues his trial counsel was constitutionally ineffective for failing to request a limiting instruction advising the jury that it could use the rap lyrics only to determine whether they contained a description or admission by Canady of the crimes charged. Trial counsel testified he chose not to request a limiting instruction because he did not want to further highlight that evidence. The trial court determined this was reasonable trial strategy.

¶30    Canady argues that because the rap lyrics were the focus of a significant evidentiary presentation and the subject of considerable closing argument, trial counsel's claimed strategy is unreasonable in the context of this case. But Canady's trial counsel was specifically concerned about the possible effect of the judge highlighting the evidence when giving the instruction, stating, "It's coming out of the judge's mouth and it makes it holier other than just coming in at trial."

¶31    In seeking to rebut this reasoning, Canady exaggerates the scope of trial counsel's testimony. Canady contends the decision to forego a limiting instruction was unreasonable because trial counsel "admitted the impact [of the judge's directive] would depend on what the instruction said[.]" To the contrary, at the hearing, trial counsel was merely asked whether a limiting instruction would have bolstered the argument that the rap lyrics did not constitute admissions to the charged crimes. It was to that question that trial counsel responded, "It depends

on the instruction." At no point did trial counsel testify that a highly refined limiting instruction could have mollified his concerns about the judge highlighting the lyrics. Accordingly, we conclude trial counsel's refusal to request a limiting instruction regarding the proper use of the rap lyrics was "within the wide range of reasonable professional assistance[.]" *See Strickland v. Washington*, 466 U.S. 668, 689 (1984).

### C.   Failure to Request Lesser-Included Instruction for Felony Murder

¶32   It is undisputed that trial counsel did not request a lesser-included instruction for felony murder. If an offense is in fact a lesser-included offense to a charged crime, the lesser-included instruction should be provided "if 'there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense.'" *State v. Johnson*, 2021 WI 61, ¶27, 397 Wis. 2d 633, 961 N.W.2d 18 (citation omitted).

¶33   In accordance with the State's theory, Canady leans on the notion that the homicide occurred during the course of an armed robbery. Canady argues the felony murder instruction would have "provide[d the jury with] a way to resolve the case consistent with the absence of direct evidence of intent but without acquitting Canady entirely." In essence, Canady argues the jury could have reasonably concluded that Canady was the shooter, but his gun merely "discharged" during the course of the armed robbery without him forming the intent to kill.

¶34   To the contrary, there is no basis in this evidentiary record to conclude that, if the jury found that Canady was the shooter, he lacked the

necessary intent when he fired the weapon.[7] McClain was shot in the head at close range. The State's case included strong evidence of motive for the homicide, consisting of testimony that Canady wanted McClain's gun in the hours immediately preceding the shooting. A weapon that was likely McClain's was found in Canady's possession after the fact.

¶35 Although there was no "smoking gun" piece of evidence in terms of Canady's intent when firing, the circumstantial evidence painted a compelling portrait of Canady as an individual who had the purpose to kill or was aware that his conduct was practically certain to cause the result. *See* WIS. STAT. § 939.23(4). Because there was no reasonable basis in the evidence to acquit Canady of the intentional homicide count if the jury concluded he was the shooter, trial counsel was not deficient for failing to request a lesser-included instruction for felony murder.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Canady concedes that, based on the evidence, the jury was "very likely" to conclude that he was "involved" in the shooting. It is unclear by this statement whether Canady intends to raise the prospect that someone else committed the shooting, while he was merely present at the scene. Any such argument is insufficiently developed. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). In any event, even if we were to construe his argument in this broader fashion, the result is the same: there was an insufficient evidentiary basis to warrant the lesser-included instruction of felony murder.